AO 106 (Rev. 04/10) Application for a Search Warrant *(Page 1)*

---

UNITED STATES DISTRICT COURT
for the
Northern District of New York

| | |
|---|---|
| In the Matter of the Search of <br> *(Briefly describe the property to be searched or identify the person by name and address)* <br> ONE BLACK SAMSUNG S22 CELL PHONE WITH IMEI 354730480782873, CURRENTLY LOCATED AT WELLESLEY ISLAND BORDER PATROL STATION SEIZURE ROOM, 45764 LANDON ROAD, WELLESLEY ISLAND, NY 13640 | Case No.    5:23-mj- 0092 (ML) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property: *(identify the person or describe the property to be searched and its given location)*:

See Attachment A.

located in the ___Northern___ District of ___New York___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324(a)(1)(A)(i) | Bringing Aliens to the United States |
| 8 U.S.C. § 1324(a)(1)(A)(ii) | Transporting Illegal Aliens |
| 8 U.S.C. § 1324(a)(1)(A)(V)(I) | Conspiracy to Smuggle Aliens |
| 8 U.S.C. § 1325 | Unlawful entry by an alien. |

The application is based on these facts:
See attached affidavit.

☒ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days): is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

AO 106 (Rev. 04/10) Application for a Search Warrant *(Page 2)*

---

Attested to by the Affiant:

*Applicant's signature*

Peter T. Lombardi, Border Patrol Agent

*Printed name and title*

Attested to by the affiant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure via telephone.

Date: February 16, 2023

*Judge's signature*

City and State: Binghamton, NY      Hon. Miroslav Lovric, U.S. Magistrate Judge

*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: ONE BLACK SAMSUNG S22 CELL PHONE WITH IMEI 354730480782873, CURRENTLY LOCATED AT WELLESLEY ISLAND BORDER PATROL STATION SEIZURE ROOM, 45764 LANDON ROAD, WELLESLEY ISLAND, NY 13640 | Case No. 23-mj- 0092 (ML) |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, **Peter T. Lombardi II**, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of one black Samsung S22 cell phone, with IMEI 354730480782873 (the "SUBJECT DEVICE"), which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B. While the SUBJECT DEVICE was seized pursuant to Customs and Border Protection's border search authority, I seek this search and seizure warrant in an abundance of caution to be certain that the examination and use of the information contained within the SUBJECT DEVICE complies with the Fourth Amendment and applicable law.

2.  I am a Border Patrol Agent (BPA) with the United States Department of Homeland Security (DHS), Bureau of Customs and Border Protection (CBP), United States Border Patrol (USBP), Buffalo Sector Targeted Enforcement Unit (TEU), and assigned to the Wellesley Island Border Patrol Station. I have been a Border Patrol Agent since February 2019. My primary duty is to assist in the prevention of illicit trafficking of people and contraband between the official ports of entry. My authority to perform this mission is articulated in the Immigration and

Nationality Act, sections 235 and 287, and Title 8 U.S.C. Section 1357. These bodies of law relate to, among other things, a Border Patrol Agents authority to interrogate any alien or person believed to be an alien, and to make an arrest of any alien who is entering or attempting to enter the United States in violation of the immigration laws. To enforce these laws, I have received training at the Federal Law Enforcement Training Center in Artesia, New Mexico, in Law, Operations, Firearms, Driving Techniques, and Physical Techniques.

3.      I have investigated violations of the Immigration Nationality Act (INA) including illegal entry of aliens in violation of Title 8, United States Code, Section 1325, and the smuggling of aliens in violation of Title 8, United States Code, Section 1324. I have written and executed search warrants for electronic devices and have reviewed the evidence contained within those devices. I have analyzed data and information from electronic devices and presented that data as evidence during criminal investigations.

4.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5.      The property to be searched is: one black Samsung S22 cell phone with IMEI 354730480782873 (the "SUBJECT DEVICE"). The SUBJECT DEVICE is currently located at Wellesley Island Border Patrol Station, 45764 Landon Road, Wellesley Island, NY 13640.

6.      The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

### PROBABLE CAUSE

7.      The United States, including CBP, are investigating Luis GUAJACA, David Isaac BRAVO-MEZA, and Gilberto PERALTA-RIVERA, and others unknown, regarding violations of

8 U.S.C. § 1324(a)(1)(A)(i) [Bringing Aliens to the United States], 8 U.S.C. § 1324(a)(1)(A)(ii) [Transporting Illegal Aliens], and 8 U.S.C. § 1324(a)(1)(A)(V)(I) [Conspiracy to Smuggle Aliens], and 8 U.S.C. § 1325(a) [Illegal Entry] (collectively, the "Subject Offenses"). GUAJACA was arrested on February 6, 2023, upon probable cause that he was transporting illegal aliens from the Canada-United States international border. Upon his arrest, the Subject Device was seized incident to his arrest and there is probable cause to believe that the Subject Device was an instrumentality being used to commit the Subject Offenses and has evidence of the Subject Offenses. As a result, there is probable cause to search the Subject Device for evidence of these crimes.

<u>Smuggling Event on February 6-7, 2023</u>

8. On February 6, 2023, at approximately 9:00 p.m., Wellesley Island Border Patrol Agents working Targeted Enforcement Unit (TEU) operations were provided information to be on the lookout for a silver Honda CRV bearing New Jersey registration E66NUZ (the "Subject Honda CRV") traveling southbound on State Route 11 from Hopkinton, NY.

9. State Route 11 is a very common route used by migrant smugglers to move their cargo further south into the United States. Migrant smugglers are known to use SUV rental vehicles since they are aware their personally owned vehicles could be seized for forfeiture if they are apprehended smuggling migrants into the United States. These rental vehicles are also newer vehicles that are reliable and won't have many operational defects that would lead mechanical failure or to them being pulled over for improper equipment.

10. The Subject Honda CRV was observed earlier in the evening near Ellenburg, New York. Ellenburg is a town within close proximity of the United States-Canada International Boundary and the origin of multiple migrant smuggling cases previously apprehended by the

3

Wellesley Island Border TEU. Ellenburg is a prime location for migrants to cross the International Boundary due to its remote and rural landscape.

11. The SUV had remained near the border area in Ellenburg for up to three hours before making its way southbound from Hopkinton, New York. This amount of time spent near the remote border area late at night is common for migrant smugglers while they wait for the migrants to cross the International Boundary.

12. Based on my training and experience regarding vehicle patterns of human and narcotic smuggling, the travel patterns of the Subject Honda CRV of going northbound then southbound relatively soon afterwards matched the criteria of human or narcotic smuggling. The Subject Honda CRV was also a vehicle registration belonging to a rental facility, which as noted above, are often used by smugglers to facilitate the transportation of humans and narcotics.

13. At approximately 11:55 p.m., Border Patrol Agent Evan Drake encountered a vehicle matching the description of the Subject Honda CRV traveling southbound on State Route 11 near Philadelphia, New York. BPA Drake pulled behind the Subject Honda CRV and was able to confirm the New Jersey registration E66 NUZ matched. The driver slowed the Subject Honda CRV to below the speed limit at this time. BPA Drake observed multiple individuals on-board.

14. While following the Subject Honda CRV southbound on State Route 11 it continued to Interstate 81 Southbound. BPA Drake activated his emergency lights and sirens and proceeded to conduct a vehicle stop near the Bradley Street exit.

15. BPA Drake approached the Subject Honda CRV, identified himself as a United States Border Patrol Agent, and questioned the occupants as to their citizenship. The driver, later identified as Luis GUAJACA, was ascertained to be a citizen of Guatemala, and presented a United States Employment Authorization Document (EAD). The two passengers, later identified as

David Isaac BRAVO-MEZA, and Gilberto PERALTA-RIVERA, were ascertained to be citizens and nationals of Mexico without any legal immigration documents to be in, reside or work in the United States.

16. Soon thereafter, Border Patrol Agents placed all subjects under arrest. Border Patrol Agents assumed custody of the vehicle and all the personal belongings and transported the subjects and belongings back to the Wellesley Island Border Patrol Station.

17. At the Wellesley Island Border Patrol Station, the subjects and their personal belongings were searched for weapons and other illicit contraband. During this search, the Subject Device—a Black Samsung S22 cell phone, with IMEI 354730480782873—was seized from the person of Luis GUAJACA.

Interviews with BRAVO-MEZA and PERALTA-RIVERA

18. At the Wellesley Island Border Patrol Station, at about 2:55 a.m., PERALTA-RIVERA was read his Miranda rights, which he acknowledged, waived, and agreed to speak with investigators. PERALTA-RIVERA stated he was going to pay the driver, who he knew to be "Luis," $5,000 USD to take him a few hours to the west and from there he would take a bus the rest of the way to Oregon. PERALTA stated he flew from Mexico City, Mexico to Toronto, Canada and then traveled with BRAVO-MEZA to the Canadian-United States border via Uber. PERALTA-RIVERA further stated that he had lost his cell phone, so BRAVO-MEZA had been in charge of communicating with Luis and giving their GPS location to him to make sure Luis could pick them up. PERALTA stated Luis called BRAVO-MEZA's phone to tell him he was on the roadway and then flashed his lights when they were close. PERALTA-RIVERA stated once they got the signal, they exited the wooded area near the border, and entered the Subject Honda CRV. When they were being pulled over, Luis indicated to them to not be nervous.

19. At the Wellesley Island Border Patrol Station, at about 2:55 a.m., BRAVO-MEZA was read his Miranda rights, which he acknowledged and then waived and agreed to speak with investigators. BRAVO-MEZA stated that he was going to pay $2,000 to the driver of the vehicle, LUIS GUAJACA, to be transported to Chicago, Illinois. BRAVO-MEZA stated he flew from Mexico City, Mexico, to Toronto, Canada with the intention of crossing the Canadian-United States International Boundary. BRAVO-MEZA stated he made these arrangements in Mexico with PERALTA-RIVERA, with whom he was apprehended. BRAVO stated PERALTA-RIVERA knew his brother and that is how they were connected. BRAVO stated they took separate flights from Mexico to Canada and made their way to Montreal. Once in Montreal, BRAVO-MEZA and PERALTA-RIVERA took an Uber to the United States-Canada border to cross. BRAVO-MEZA stated that his brother also connected him with the driver of the Subject Honda CRV that they were arrested in and the driver's name was Luis. BRAVO-MEZA stated Luis had his number and communicated with BRAVO-MEZA through WhatsApp messenger.[1] BRAVO-MEZA further explained that he provided Luis with his GPS Location once they reached a road in the United States.

Background on Alien Smugglers

20. Based on my training and experience in this and other cross border criminal investigations I have been involved with, including individuals entering the United States illegally, individuals crossing the border illegally will often communicate and coordinate with someone to pick them up once in the United States or to inform them that they successfully crossed the border

---

[1] WhatsApp is an internationally available freeware, cross-platform, centralized instant messaging and voice-over-IP service owned by US tech conglomerate Meta Platforms, Inc f.k.a. Facebook, Inc. WhatsApp allows users to send text and voice messages, make voice and video calls, and share images, documents, user locations, and other content.

via cellular telephone. Individuals involved in crossing the border illegally often use a cellular telephone's GPS function to search for and map out potential crossing and pickup locations and to navigate to such places. An additional function of cellular telephones that can be utilized by individuals crossing illegally includes the camera, as individuals will often take photos of where they are crossing the border illegally to share with the smugglers to help identify an exact location.

21. Additionally, smugglers often communicate with each other using cellular phones and downloaded applications to coordinate smuggling events. Smartphones, such as the SUBJECT DEVICE, can also be used to access social media. Based on my training, knowledge, and experience of alien smuggling, I know that social media platforms, such as Facebook and WhatsApp, are often used by smugglers to find customers and for communication between smugglers and aliens illegally entering the United States.

22. The SUBJECT DEVICE is currently in the lawful possession of the United States Border Patrol and has been since February 7, 2023. In my training and experience, I know that the SUBJECT DEVICE has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the SUBJECT DEVICE first came into the possession of the CBP.

23. While CBP might already have all the necessary authority to examine the SUBJECT DEVICE, I seek this search and seizure warrant in an abundance of caution to be certain that the examination and use of the information contained within the SUBJECT DEVICE complies with the Fourth Amendment and applicable law.

## **TECHNICAL TERMS**

24. Based on my training and experience, I use the following technical terms to convey the following meanings:

a. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some

GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

25. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at https://www.samsung.com/us/smartphones/galaxy-s22/, I know that the SUBJECT DEVICE has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

26. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

27. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the devices because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f. I know that when an individual uses an electronic device to communicate and conspire with other individuals to smuggle, transport, and bring illegal aliens into the United States, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime

of this type may contain data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

28. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant. The examination will be performed by representatives from the Department of Homeland Security and their designees.

29. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

30. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the SUBJECT DEVICE described in Attachment A to seek the evidence and property described in Attachment B.

*****

Attested to by the Affiant.

_____
Peter T. Lombardi II
Border Patrol Agent-Targeted Enforcement Unit
United States Border Patrol

I, the Honorable Miroslav Lovric, United States Magistrate Judge, hereby acknowledge that this affidavit was attested to by the affiant by telephone on February __16__, 2023 in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

_____
Hon. Miroslav Lovric
United States Magistrate Judge

13

## ATTACHMENT A

*Property to be Searched*

The property to be searched is a Black Samsung S22 cell phone, with IMEI 354730480782873, seized from Luis Guajaca on February 7, 2023 (the "Subject Device"). The Subject Device is currently located at Wellesley Island Border Patrol Station, 45764 Landon Road, Wellesley Island, NY 13640.

This warrant authorizes the forensic examination of the Subject Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

### *Particular Things to be Seized*

1. All records on the Subject Device described in Attachment A that relate to violations of 8 U.S.C. § 1324(a)(1)(A)(i) [Bringing Aliens to the United States], 8 U.S.C. § 1324(a)(1)(A)(ii) [Transporting Illegal Aliens], and 8 U.S.C. § 1324(a)(1)(A)(V)(I) [Conspiracy to Smuggle Aliens], and 8 U.S.C. § 1325(a) [Illegal Entry] (collectively, the "Subject Offenses"), concerning Luis GUAJACA, David Isaac BRAVO-MEZA, and Gilberto PERALTA-RIVERA, and other as-yet unidentified co-conspirators, including:

   a. Communications with aliens and conspirators regarding the transportation of aliens;

   b. Any information of other smuggling events that GUAJACA was involved in;

   c. Any information related to the facilitation of BRAVO-MEZA and PERALTA-RIVERA's illegal entry into the United States;

   d. Any information related to the facilitation or smuggling of individuals into the United States;

   e. Any information related to or identifying those who assisted in facilitating BRAVO-MEZA and PERALTA-RIVERA's illegal entry into the United States, to include GUAJACA;

   f. Any information relating to the smuggling of aliens into the United States including communications between GUAJACA and other smugglers;

   g. Any information recording or detailing BRAVO-MEZA and PERALTA-RIVERA's location, schedule, and travel while coming to or being in the United States;

   h. any information recording GUAJACA's schedule or travel, such as GPS location information, while going to and coming back from transporting aliens into the United States, including from February 5, 2023, to the February 7, 2023;

   i. Types, amounts, and prices of aliens smuggled;

   j. Any information related to origins of aliens (including names, addresses, phone numbers, or any other identifying information);

   k. All hotel invoices, records related to the rental of motor vehicles, and train ticket records; and

   l. All bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the Subject Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.